## 12125

### WATTS *ET AL.* v. SOUTHERN RAILWAY CO.

#### (138 S. E., 290)

1. CARRIERS—FILING CLAIM AS REQUIRED BY BILL OF LADING HELD CONDITION PRECEDENT TO RECOVERY, NOTWITHSTANDING CAUSE OF ACTION WAS BASED ON CONVERSION.—Filing of claims by shipper for loss resulting from carrier's disposal of goods for freight charges after refusal of consignee to accept them within six months after delivery, as required by bill of lading, *held* a condition precedent to recovery, notwithstanding that cause of action was based on theory of conversion.

2. CARRIERS—CONSIGNEE'S REFUSAL TO ACCEPT GOODS CONSTITUTED "FAILURE OF DELIVERY," REQUIRING FILING OF CLAIM AS PRECEDENT TO RECOVERY BY SHIPPER.—Refusal of consignee to accept goods constituted "failure of delivery," requiring filing of claim thereafter by shipper as condition precedent to recover against carrier for loss resulting from disposal of goods for freight charges.

3. CARRIERS—SHIPPER'S LETTER TO CARRIER, REQUESTING RESHIPMENT AFTER CONSIGNEE'S REFUSAL TO ACCEPT DELIVERY, HELD NOT CLAIM FOR LOSS.—Shipper's letter to carrier, after refusal of consignee to accept delivery of goods, requesting reshipment to themselves, *held* insufficient as claim, within meaning of requirement of bill of lading that claims for loss must be made in writing within certain period, since it lacked essential elements of claim, in that it contained nothing which would apprise carrier that shipper intended to make claim, or show character or amount of any claim that may have been contemplated.

Before BONHAM, J., Chester, December, 1924. Affirmed.

Action by Ridley Watts and others, partners doing busi-

---

Note: On applicability in case of misdelivery or nondelivery of provision in shipping contract requiring presentation of claim for damages, see annotation in 31 L. R. A. (N. S.), 1178; 4 R. C. L., 797; 1 R. C. L. Supp., 1216.

ness under the firm name of Ridley Watts & Co. against Southern Railway Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

The exceptions are as follows:

"Plaintiffs appeal upon the following grounds:

"(1) For error, overruling appellants' motion to strike out paragraphs 7 and 8 of respondent's answer as irrelevant and as not constituting a defense to the cause of action stated in the complaint; the error being (1) in not holding that said cause of action is one for the recovery of damages for the wrongful conversion of appellants' goods after they had reached their destination over the railroad of respondent as the terminal carrier and were in respondent's possession as warehouseman; and (2) in holding that the provision of the bill of lading referred to in said paragraphs was relevant and the making of a claim in writing a condition precedent to appellants' right of recovery in said action.

"(2) Because the provision in the bill of lading recited in the seventh paragraph of respondent's answer as to the making of a claim in writing as a condition precedent to recovery was applicable solely to loss, damage, or injury of the goods while in transit, and had no relevancy to the liability of respondent for the conversion of appellants' goods while in its possession as warehouseman, after its contract of carriage had been completed and after tender of delivery to the consignee and his refusal thereof, and it is respectfully submitted that it was error to hold that said provision was applicable to the case made by the pleadings and testimony in this action, and that failure to make such claim in writing was a bar to appellants' right of recovery.

"(3) Because, even if the provision in the bill of lading set forth in the seventh paragraph of respondent's answer requiring the filing of a claim in writing within six months after the lapse of reasonable time for making delivery was applicable under the pleadings and testimony in this case, the time for the filing of such claim would not begin to run until after appellants were informed of such failure to make

delivery, and, there being testimony to the effect that appellants had no such knowledge prior to June 27, 1921, and that a claim was formally filed with the initial carrier on August 5, 1921, it was error not to submit the case to the jury to determine whether, under the testimony, the said claim was filed in time.

"(4) Because, there being no testimony in this case tending to show that respondent notified the appellants of the consignee's refusal of their property described in the complaint prior to its shipping the same, without authority, from Chester, S. C., to the Columbia Handkerchief Company, at Columbia, S. C., on July 7, 1920, and there being testimony to the effect that appellants made demand upon the respondent for the return of said goods on August 5, 1920, while they were in respondent's possession as warehouseman, and also testimony that appellants had no actual knowledge as to the respondent's possession of said property until after it was disposed of in Alabama more than a year later, it is respectfully submitted that it was error not to submit the case to the jury, under proper instructions, for their decision as to whether respondent had converted appellants' said property, and was liable in damages therefor.

"(5) Because the uncontradicted testimony showing that the goods in question herein were of the value stated in the complaint, and that the same were wrongfully converted by the respondent while sustaining the relation thereto of a warehouseman, it was error to refuse appellants' motion for a direction of verdict in their favor for the full amount claimed.

"(6) Because, if it was correct to hold that the making of a claim in writing was a condition precedent to appellants' right of recovery herein, it is respectfully submitted that it was error to hold that the letter of August 5, 1920, from appellants to respondent, demanding the return of the goods in question, did not substantially meet that condition, being the only character of claim that was pertinent to the situa-

tion of said goods being then in the possession of the respondent, and being within the time limited in the bill of lading under which they were shipped."

*Messrs. William J. Cherry and J. L. Glenn, Jr.,* for appellants, cite: *"Conversion:"* 28 Enc. L. (2nd Ed.), 679, 681, 691, 695, 705; 26 R. C. L., 1098, 1110; 1 Bail., 546; 11 Rich., 267; 26 S. C., 112. *Applies to carriers:* 10 C. J., 271; 254 U. S., 538; 65 L. Ed., 392; 77 S. E., 647; 45 L. R. A. (N. S.), 19; 144 S. W., 1196; 170 S. W., 572: 119 S. W., 642; 22 L. R. A. (N. S.), 1107; 108 S. C., 186; 142 N. Y. S., 533; 11 S. W., 511; 28 L. R. A. (N. S.), 1088; 4 A. L. R., 1285. *Liability of carriers for freight hauled:* Sec. 8563, U. S., Comp. Sts; 240 U. S., 632; 60 L. Ed., 836; 256 U. S., 427; 65 L. Ed., 1032; U. S. Comp. Sts., Sec. 8604-A, 3 Wood on R. R. (2nd Ed.), 1877, Secs. 424, 427; Id., 1910, Sec. 445; 22 L. R. A. (N. S.), 1107; 83 U. S., 218; 21 L. Ed., 297; Am. Rep., 564; 4 R. C. L., 688-690; 219 U. S., 186; 55 L. Ed., 167; 236 U. S., 157; 59 L. Ed., 520; 243 U. S., 592; 61 L. Ed., 925; 152 N. Y. S., 156; 82 S. C., 236; 76 S. C., 9; Fed. Sts. Ann. (1st Ed.), 1916 Supp., 549; 63 S. E., 415; 62 So., 698; 115 S. W,. 664; 197 N. Y. S., 704; 17 L. R. A. (N. S.), 640. *Filing of claims:* 268 U. S., 85; 69 L. Ed., 857; 250 U. S., 465; 63 L. Ed., 1088. *Whether claim filed within required time, question for jury:* 22 Enc. L. (2nd Ed.), 1252; 1 A. L. R., 900; 111 U. S., 185; 28 L. Ed., 395; 7 Am. Rep., 536; 56 A. S. R., 187. *Whether appellants entitled to recovery question for jury:* 264 U. S., 281; 68 L. Ed.. 685; 10 C. J., 338; 176 S. W., 325.

*Messrs. McDonald & McDonald, and Frank G. Tompkins,* for respondent, cite: *Any transactions relating to interstate commerce or consequent rights and liabilities, governed by decisions of the Federal Courts:* 240 U. S., 612; 60 L. Ed., 825; 242 U. S., 148; 61 L. Ed., 210; 258 U. S., 369; 66 L. Ed., 665. *Limitation of liability in bills of lading:* 263 U. S., 19; 68 L. Ed., 140; 241 U. S., 190; 60 L. Ed., 949;

240 U. S., 34; 60 L. Ed., 511; 268 U. S., 85; 69 L. Ed., 857; 266 U. S., 92; 69 L. Ed., 182; 130 S. E., 647; 242 Pac., 151; 240 U. S., 632; 60 L. Ed., 836; 270 S. W., 597. *Waiver of tariff rules:* 266 U. S., 92; 56 Int. Com Comm. R., 4391; Tariff Law Series, 1921, 2019, P., 317, 318; 4 Consolidated Frt. Classifications, 37. *Letters not sufficient filing of claim:* 10 Fed. (2nd), 327. *Failure by carrier to notify shipper of non-delivery not waiver of requirement for filing claim:* 10 Fed. (2nd), 909.

December 16, 1926.

The opinion of the Court was delivered by Mr. Justice Stabler.

Action for damages for loss of goods.

The undisputed facts are that on March 5, 1920, a case of goods was shipped from Fall River, Mass., to Ernest L. Barton, at Chester, S. C., at the invoice price of $1,020.21. This shipment was made by the Fall River Bleachery, of Fall River, Mass., by the order and for the account of the firm of Watts, Stebbins & Co., of New York. The plaintiffs in this case, Ridley Watts & Co., are the successors of Watts, Stebbins & Co., and as such successors are the alleged owners of the goods in question. The defendant Southern Railway Company received the goods en route, from the Clyde Steamship Company, at Charleston, S. C., on June 23, 1920, and transported them to Chester, where they arrived on June 29, where they were tendered by the defendants to the consignee, Barton, who refused them. On July 7, 1920, these goods, for some reason, were shipped from Chester by the agent of the defendant at that place, consigned to the Columbia Handkerchief Company, at Columbia, S. C., where they arrived on July 13, were refused by the Columbia Handkerchief Company, and were then placed in the defendant's warehouse, where they remained until August 2, 1921. The defendant company then shipped them to Birmingham, Ala., where it sold them for freight charges, etc.; the net

proceeds of the sale, in the sum of $180.86, being tendered to the appellants, and being accepted by them without prejudice to their claim for the full measure of damages demanded.

The plaintiffs allege, among other things, that the defendant's course in disposing of the goods was unlawful, and was followed in the face of written requests by the shippers (accompanied in at least one instance by a copy of the bill of lading), for return of the goods. They base their cause of action upon the theory of conversion.

By paragraph 6 of the amended answer the defendant alleges that its sale of the goods for payment of freight charges, etc., was unlawful.

By paragraph 7 of the amended answer alleges that the goods were shipped under a bill of lading containing the following provision which had been duly filed with and approved by the Interstate Commerce Commission:

"Except where the loss, damage, or injury complained of is due to the delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after the delivery of the property, or, in case of export traffic, within nine months after delivery at port of export, or, in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed."

Paragraph 8 of the amended answer is as follows:

"(8) That, as this defendant is informed and believes, the plaintiffs herein failed to file any claim in writing for loss, damage, or delay to said shipment of goods within six months after the delivery of the property or within six months after a reasonable time for delivery had elapsed, and this defendant pleads the said condition and provision in said bill of lading as a complete bar and defense to plaintiffs' alleged cause of action herein."

The Court overruled plaintiffs' motion to strike out paragraphs 7 and 8 of the amended answer; such motion being based upon the grounds that the allegations contained in the said paragraphs were irrelevant and not a defense to plaintiffs' cause of action.

The case was tried before his Honor, Judge Bonham, and a jury, at the November, 1924, term of the Court of Common Pleas for Chester County. At the trial of the case counsel for both parties agreed:

"That the shipment of goods mentioned in the complaint was made under a bill of lading containing the limitations as to liability as alleged in Section 7 of the answer as amended, and that the initial carrier had filed with the Interstate Commerce Commission its tariff containing such limitation as to notice of claims."

At the close of all the testimony, defendant's counsel made a motion for a directed verdict, which motion was granted upon the grounds, in substance, that the shippers had failed to comply with the provisions of the contract of shipment requiring that a claim for loss be filed in writing within the time required by the terms of the contract.

The plaintiffs appeal and impute error to the trial Judge: (1) Error in holding, "under the various forms in which the question was presented, that the making of a claim in writing was a condition precedent to appellants' right of recovery"; (2) error in holding that the shippers had not complied with the provisions of the contract of shipment requiring the filing of a written claim for loss; (3) error in not submiting the question of conversion to the jury; and (4) error in refusing to direct a verdict for the plaintiffs. (The executions will be reported.)

The principal questions presented by this appeal are (1) whether the filing of a claim within the time and in the manner set forth by the bill of lading was a condition precedent to recovery; and (2), if so, whether claim was so filed.

Under the undisputed facts of the case, we look, in the determination of these questions, to the decisions of the Federal Courts for guidance.

In *Chicago & Northwestern R. Co. v. C. C. Whitnack Produce Co.,* 258 U. S., 369; 42 S. Ct., 328; 66 L. Ed., 665, .he Court said:

"It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under.through bills of lading depend upon Acts of Congress, agreements between the parties and common-law principles accepted and enforced in the Federal Courts. *New York Central & Hudson River R. Co. v. Beaham,* 242 U. S., 148, 151 [37 S. Ct., 43; 61 L. Ed., 210]."

See, also, *Southern Express Co. v. Byers,* 240 U. S., 612; 36 S. Ct., 410; 60 L. Ed., 825, L. R. A., 1917-A, 197.

Federal decisions, and generally state decisions, hold that a provision or limitation of liability such as is included in the bill of lading involved in this case is reasonable, and the United States Supreme Court, has held that such a provision cannot be waived by the carrier, and that state laws or rules of state procedure or practice cannot create, in effect, an evasion of same.

*Davis v. Henderson,* 266 U. S., 92; 45 S. Ct., 24; 69 L. Ed., 182, was a case where action was brought against the carrier for alleged failure to furnish a car within reasonable time after notice. Written notice had not been given the carrier in compliance with the rule providing that notice of orders for cars must be placed with the local agent in writing. The plaintiff claimed that he had given oral notice to the carrier and that its agent had accepted same. The Court said:

"There is no claim that the rule requiring written notice was void. The contention is that the rule was waived. It could not be. The transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff. *Georgia, Forida & Alabama*

*R. C. v. Blish Milling Co.,* 241 U. S., 190, 197 [36 S. Ct., 541; 60 L. Ed., 948]; *Missouri, Kansas & Texas Ry. Co. v. Ward,* 244 U. S., 383, 388 [37 S. Ct., 617; 61 L. Ed., 1213]; *Davis v. Cornwell,* 264 U. S., 560, 562 [44 S. Ct., 410; 68 L. Ed., 848]."

*American Ry. Exp. Co. v. Levee,* 263 U. S., 19; 44 S. Ct., 11; 68 L. Ed., 140, was an action for damages for the value of a trunk and its contents weighing 100 pounds or less. The carrier based its defense upon the provision in the receipt given by the company to the petitioner, that the company should not be "liable in any event for more than $50 for any shipment of 100 pounds or less." The state Court gave judgment for $863.75 and interest, holding that, under the State law, the burden was on the carrier to "prove that (the) loss or damage has been occasioned by accidental and uncontrollable events." The case appealed to the United States Supreme Court which, in its opinion, said:

"Coming to the merits, the limitation of liability was valid, whatever may be the law of the State in cases within its control. *Adams Express Co. v. Croninger,* 226 U. S., 491 [33 S. Ct., 148; 57 L. Ed., 314; 44 L. R. A. (N. S.), 257]; *Union Pacific R. Co. v. Burke,* 255 U. S., 317, 321 [41 S. Ct., 283; 65 L. Ed., 656]; *American Ry. Exp. Co. v. Lindenburg,* 260 U. S., 584 [43 S. Ct., 206; 67 L. Ed., 414]. The effect of the stipulation could not have been escaped by suing in trover and laying the failure to deliver as a conversion if that had been done. *Georgia, Florida & Alabama R. Co. v. Blish Milling Co.,* 241 U. S., 190, 197 [36 S. Ct., 541; 60 L. Ed., 948]. No more can it be escaped by a State law or decision that a failure to deliver shall establish a conversion unless explained. The law of the United States cannot be evaded by the forms of local practice. *Rogers v. Alabama,* 192 U. S., 226, 230 [24 S. Ct., 257; 48 L. Ed., 417]."

The Court below, in directing a verdict for the respondent, rested its judgment largely upon the case of *Georgia, Florida & Alabama Railway Company v. Blish Milling Co.,* 241 U.

S., 190; 36 S. Ct., 541; 60 L. Ed., 948. The facts in that case are somewhat similar to the facts in the case at bar. The Blish Milling Company shipped a carload of flour to Bainbridge, Ga., consigned to its own order, with directions that a certain grocery company of that place be notified. Upon arrival of the shipment, the carrier, without requiring the surrender of the bill of·lading, delivered the car of flour to the grocery company. While unloading it, the grocery company discovered that some of the flour was damaged and returned the shipment to the carrier. The carrier then unloaded the car and sold, as perishable property, within a few days, a part of the shipment. Several telegrams passed between the shipper and the carrier in reference of the flour; the shipper finally sending a telegram to the carrier in these words:

"We will make claim against the railroad for the entire contents of the car at invoice price. Must refuse shipment as we cannot handle it."  ·

The milling·company then brought an action in trover against the carrier and obtained a verdict in the State Court for $1,084.50.

The railroad company based its defense upon a limitation in the bill of lading with respect to the filing of claims for loss or damage within four months, contending that the shipper had failed to file such claim. The ͨCourt of Appeals held that the filing of a claim was unnecessary. On appeal, the Supreme Court of the United States, in passing upon that point, said:

"We are dealing with a clause in a bill of lading issued by the initial carrier. The statute casts upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility (*Atlantic Coast Line v. Riverside Mills*, 219 U. S., 185; 199-203 [31 S. Ct., 164; 55 L. Ed., 167; 31 L. R. A. (N. S.), 7]; *N. Y., P. & N. R. Co. v. Peninsula Produce Exchange*, 240 U. S., 34, 38 [36 S. Ct., 230; 60 L. Ed., 511; L. R. A.,

1917-A, 193]), and the words of the Statute are compre-
hensive enough to embrace responsibility for all losses re-
sulting from any failure to discharge a carrier's duty as to
any part of the agreed transportation which, as defined in the
Federal Act, includes delivery. It is not to be doubted that
if, in the case of an interstate shipment under a through bill
of lading, the terminal carrier. makes a misdelivery, the
initial carrier is liable; and, when it inserts in its bill of lad-
ing a provision requiring reasonable notice of claims 'in case
of failure to make delivery,' the fair meaning of the stipu-
lation is that it includes all cases of such failure, as well
those due to misdelivery as those due to the loss of the
goods. But the provision in question is not to be construed
in one way with respect to the initial carrier and in another
with respect to the connecting or terminal carrier. As we
have said, the latter takes the goods under the bill of lading
issued by the initial carrier, and its obligations are measured
by its terms (*Kansas Southern R. Co. v. Carl* [227 U. S.,
639; 33 S. Ct., 391; 57 L. Ed., 683], *supra; Southern Rail-
way v. Prescott* [240 U. S., 632; 36 S. Ct., 469; 60 L. Ed.,
836] *supra*) ; and, if the clause must be deemed to cover a
case of misdelivery when the action is brought against the
initial carrier, it must equally have that effect in the case of
the terminal carrier which in the contemplation of the parties
was to .make the delivery. The clause gave abundant op-
portunity for presenting claims and we regard it as both ap-
plicable and valid.

"In this view, it necessarily follows that the effect of the
stipulation could not be escaped by the mere form of the ac-
tion. The action is in trover, but, as the State Court said, "If
we look beyond its technical denomination, the scope and
effect of the action is nothing more than that of an action for
damages against the delivering carrier.' 15 Ga. App., p.
147 [82 S. E., 784]. It is urged, however, that the carrier
in making the misdelivery converted the flour and thus
abandoned the contract. But the parties could not waive the

terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the act was aimed. *Chicago & A. R. Co. v. Kirby,* 225 U. S., 153, 166 [32 S. Ct., 648; 56 L. Ed., 1033; Ann. Cas., 1914-A, 501]; *Kansas So. R. Co. v. Carl, supra; A., T. & S. F. R. Co. v. Robinson,* 233 U. S., 173, 181 [34 S. Ct., 556; 58 L. Ed., 901]; *Southern Ry. v. Prescott, supra.* We are not concerned in the present case with any question save as to the applicability of the provision and its validity, and, as we find it to be both applicable and valid, effect must be given to it."

Under the decisions cited, the appellants' contention that the filing of a claim was not required is clearly without merit. The fact that the suit was brought as for conversion does not change the essential nature of the claim, which is one for damages. Refusal of the consignee to accept the goods constituted "failure of delivery." *American Railway Express Co. v. The Fashion Shop,* 56 App. D. C., 114; 10 F. (2d), 909. The filing of a claim was therefore a condition precedent to recovery.

Having reached this conclusion, it remains to inquire whether claim was filed as required by the bill of lading.

The appellants allege that on August 5, 1920, the following letter with respect to this shipment was sent to the respondent, at Chester, S. C.:

"On March 5, the Fall River Bleachery, Fall River, Mass., shipped for our account one case of cotton piece goods, No. 16750, consigned to Ernest L. Barton, Chester, S. C., routing same by way of O. D. Around that time the O. D. discontinued and it was delivered to destination via all rail.

"We understand that the consignee has refused to accept delivery of this case. Will you, therefore, kindly reship same to ourselves in New York. We attach hereto a copy of the original bill of lading covering the shipment."

They contend that, if the filing of a claim was necessary, this letter was a sufficient claim under the contract of shipment. It is true, as stated in the *Blish case, supra,* that "the making of a claim within the meaning of the stipulation" is for the purpose of giving reasonable notice to the carrier; still we do not think that the letter was a compliance with the stipulation. While the Court held in the same case that the filing of a claim "does not require documents in a particular form," it is clear that the letter is nothing more than a direction for reshipment of the goods. It lacks the essential elements of a claim, as it contains nothing which would apprise the carrier that the shipper intended to make claim, or to show the character or amount of any claim that may have been contemplated.

It follows, therefore, that, as no claim was filed in accordance with the provisions of the bill of lading, the trial Judge committed no error in directing a verdict for the respondent. This conclusion disposes of all grounds of error imputed by the appellants.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and BLEASE concur.

MR. JUSTICE COTHRAN (dissenting) : I think that, when the goods were refused by the consignee, and the carrier was directed to return them to the shippers, the original status of the parties under the bill of lading was terminated, and a new status created, imposing upon the carrier the obligation to return the goods, a status unaffected by the time limitation in the contract of carriage which had been terminated, and that for the unaccountable mishandling of the goods, amounting to a conversion, a tort, the carrier should respond in damages for the value of the goods, regardless of the time

limitation. 10 C. J., 335; 31 L. R. A. (N. S.), 1178, note; *Savage Factories v. Canadian Northern R. Co.,* 150 Minn., 48; 184 N. W., 367; *Chicago & S. E. R. Co. v. Fifth Nat. Bank,* 26 Ind. App., 600; 59 N. E., 43.