CENTRAL R. CO. OF NEW JERSEY v. SCHICK et al.

No. 4140.

Circuit Court of Appeals, Third Circuit.

Feb. 21, 1930.

Roger Knox, of Pittsburgh, Pa., and J. Kirk Renner, of Connellsville, Pa., for appellants.

John S. Wendt and Wendt, Graver & Richardson, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, Circuit Judge, and THOMSON and AVIS, District Judges.

AVIS, District Judge.

This is an action in assumpsit brought by the Central Railroad Company of New Jersey, appellee, against J. L. Schick and Gaetano Corrado, a partnership, doing business under the name of Moyer Coal Company, appellants, to recover certain transportation and demurrage charges on six carloads of coke shipped from points in Pennsylvania to certain points of delivery in New Jersey, received by the appellee from different connecting carrier railroad companies.

Four of said cars were consigned to Sidford & Green at pier 18, Jersey City, N. J., and the other two cars were consigned to Lewis (or Louis) Stultz, at Keyport, N. J.

It appears that both consignees were notified of delivery of cars at place of destination, and both refused to accept the shipment and unload the cars.

It is admitted by stipulation of counsel for both parties, dated September 7, 1929,

that this was done, and also that the appellants were promptly notified of the refusal of consignees to accept or unload the coke and to pay freight charges accrued thereon; that the appellants refused to give the appellee any orders for the disposition of the coke, and refused to unload and accept the coke at its destination; that appellee afterward sold said cars of coke, after giving due notice of the time and place of sale to defendants, and publishing notice of and conducting the respective sales as required by the statute of the state of New Jersey, quoted in the fourteenth paragraph of the appellee's statement of claim, for the prices set forth in said statement of claim; and that the freight or transportation charges which lawfully accrued on said shipments are correctly set forth in the statement of claim.

There appears to be no dispute as to the amount owing by appellants to appellee (and it is apparently admitted that this amount is correctly calculated in the judgment entered), if the District Court properly interpreted the law as it applied to the facts admitted and proved, and did not err in the rejection of evidence offered.

The first question argued by appellants refers to the right of appellee to hold the cars for a period of six months, and impose upon the appellants the demurrage charge, in accordance with the rates established by "National Car Demurrage Rules and Charges" duly filed with the Interstate Commerce Commission of the United States by the interstate railroad carriers concerned in the transportation of the coke in question in this case; the appellants claiming that the appellee should have held the shipment for, what they term, a reasonable period of time; and that appellee's remedy was not governed or controlled by the statute of the state of New Jersey, under which appellee claims it acted.

"All demurrage charges have a double purpose. One is to secure compensation for the use of the car and of the track which it occupies. The other is to promote car efficiency by providing a deterrent against undue detention." Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry. Co., 271 U. S. 259, 46 S. Ct. 530, 531, 70 L. Ed. 934.

In interstate commerce shipments, the free time, and subsequent charges are regulated by the filed agreements with the Interstate Commerce Commission, as herein noted, which provide that there shall be two days free time, and for each of the first four days thereafter $2 per day, and for each succeeding day $5.

■ The state of New Jersey would have no power to regulate interstate rates for demurrage charges, as these are prescribed by the tariff filed with the Interstate Commerce Commission. Chicago, R. I. & Pacific Ry. Co. v. Hardwick Elevator Co., 226 U. S. 426, 33 S. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203.

The result is that the rates as applied by the filed agreements must be followed for the purpose of ascertaining the amount actually due, and the carrier at point of destination has the authority to collect these charges.

There appears to be no act of Congress, or regulation, governing the period of time for which demurrage charges may be made, nor providing the means or method of making sale by which the carrier may dispose of the shipment and recover the amount of freight and demurrage.

■ At common law it appears that the carrier has a lien on the goods transported for the charges of transportation, and may hold the goods until the charges have been paid. This also extends to other charges, including storage. 10 Corpus Juris, pp. 456, 457.

The law of the state of New Jersey providing for the sale of goods for freight and other charges, and which is chapter 177, p. 324, of the Laws of 1904, 1 Comp. St. 1910, pp. 369, 370, and under the provisions of which appellee claims it acted, provides as follows:

"6. When freight, baggage, express or other property transported by any carrier to its destination shall not be called for by the owner or consignee, or when the owner or consignee cannot be found or is unknown or neglects or refuses to receive the same or to pay the costs and expenses of transportation and charges for detention or demurrage, and the same has remained in the possession of the carrier for six months or is perishable, the carrier may sell the same at public auction; public notice shall be given by advertisement in one or more newspapers of the county at least six days before the sale, and by notices set up at least five days before the sale in at least five of the most public places of the neighborhood where such property was directed to be left and where the sale is to take place, naming the articles to be sold, the names of the consignor and consignee, if known, the hour of sale, which shall be after ten in the forenoon, and before four in the afternoon, and the place of sale, which shall be made in some public place; if the residence of the consignee is known, written notice shall be given to him personally or by leaving the same at his residence or by mailing the same to him at his postoffice address; where the property is perishable and will depreciate in value by being longer kept, the same may be sold after two days, in which case notice shall be published at least once and posted at least one full day, or in cases of urgency, such as shipments of milk or perishable fruit, the sale may be made at once to the best advantage at public or private sale without advertisement.

"7. When a sale shall be made of such unclaimed freight, either by an officer of the court or by the carrier, the fees and expenses of the sale shall be first paid, and next the expenses and charges of the carrier for transportation, detention or demurrage and storage, and the residue shall be paid to the clerk of the county, and the officer or carrier making such sale shall file therewith a report of the sale, containing a list of the articles sold, the price for which, and the person to whom sold, the expenses of advertisement and sale, the expenses and charges paid to the carrier, the name of the consignor and consignee, and the places and dates of consignment and of receipt at destination, of all which the carrier shall keep record; the money so paid to the clerk shall be paid to the owner on the order of the county judge, but if no person shall, within one year after the sale, claim the proceeds, the same shall be paid into the school fund of the state."

■ It is contended by appellants that this New Jersey statute is not operative because in conflict with the well-settled principle that the states have no power to pass laws to affect or control interstate shipments, and that not only the amount of demurrage but also the right of sale is controlled by federal law and regulations, but present no act of Congress or regulation of the Interstate Commerce Commission in conflict therewith.

In accordance with the principle hereinbefore stated, the state law must be followed when no such regulation has been adopted by the federal Congress or the Interstate Commerce Commission. The court below committed no error in permitting the introduction as evidence of the New Jersey statute above quoted. Missouri Pacific Ry. Co. v. Larabee Flour Mills Co., 211 U. S. 612, 29 S. Ct. 214, 53 L. Ed. 352; Buck v. Kuykendall, 267 U. S. 309, 315, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286.

The appellants also contend that the aforementioned statute has been superseded or repealed by the statute of the state of New Jersey passed and approved in 1918, and being chapter 282, p. 1072, of the Pamphlet

Laws of that year (2 Cum. Supp., Comp. St. 1924 p. 2916), which reads as follows:

"1. Section forty-seven of the act mentioned in the title hereof be and the same is hereby amended so as to read as follows:

"47. When any freight has been carried on the railroad and delivered by the company at any point specified by the consignor, other than a station of the company, the company shall not, after such delivery, be responsible for the safety and security thereof. Where the consignee of property transported by railroad to any point in this State cannot be found, or refuses to receive and pay charges and remove such property, the company may make and collect such reasonable charges for the detention of any railroad car containing such property, or for the use of the railroad track occupied by such car, or for both such detention and use, commonly called demurrage or car service, as the Board of Public Utility Commissioners in this State shall by order or rule determine; provided, that notice is given to the consignee or owner, or to the shipper in cases where the consignee or owner cannot be found on whom to serve such notice, and to add such charge to the charge for the transportation of such property.

"Such company shall have a lien upon such property, or so much thereof as has not been taken, for the charges for such detention and use; provided, that in all cases where a claim made by any railroad company for detention of any car, or for demurrage, or car service charges is disputed, the consignee or owner, or the agent of either shall, on the giving to said railroad company of a bond with sufficient surety, in double the amount of such disputed charge (in no case, however, to be less than fifty dollars), conditioned for the payment of such sum as shall be found to be due, by agreement of the parties, or by judgment of any court in any suit for the same, with costs, be entitled to delivery of the goods transported in the car for the detention of which such demurrage charge is claimed free from any lien or claim for such charge; and, by memorandum of agreement signed by both principal and surety, any such bond may be extended or continued to cover other disputed demurrage charges claimed thereafter."

■ We do not find this to be so; there is no specific repealer, and the statutes do not conflict. The first act mentioned provides a means of sale of goods for the transportation and demurrage charges, and the latter act only refers to the amount of demurrage, authorizing the public utility commissioners to fix a rate which does not include the authority conferred in the sale statute, and which is apparently ineffective, as it deals with a matter entirely within the authority of the Congress, if it can be applied to interstate shipments. The result is that the first act referred to is the law of the state of New Jersey relating to sales of this character, and has not been repealed or made inoperative by the latter act referred to.

■ Appellants also contend that the provision of the statute requiring the holding of the goods for a period of six months before sale can be made is unreasonable, and that it enabled the plaintiff to recover an excessive verdict. In view of the fact that consignees refused to accept, that appellants were duly and promptly notified, and failed to pay the freight and demurrage within what they might deem to call a reasonable time, we cannot say that the legislative action was unreasonable, and are quite sure that the railroad company could not safely proceed in violation of the clear provisions of the statute.

■ The offer of the defendants to present testimony of custom was properly rejected. The defendants did not plead usage or custom, and therefore such evidence could not be received. Beard v. Marine Lighterage Corp. et al. (D. C.) 296 F. 146.

■ As our decision in this case rests upon the statute law of the state of New Jersey, the proof of a usage or custom repugnant to the provisions of the statute would be void and of no effect. Cudahy Packing Co. v. Narzisenfeld (C. C. A.) 3 F.(2d) 567.

In our opinion, the witnesses offered were not competent to testify to any custom existing at the point of destination of carloads of coke, and, the railroad company being bound by the provisions of the New Jersey statute, the proffered testimony as to custom was properly rejected.

■ The appellants also assign error because of the refusal of the District Court to accept any evidence of the transfer of coke from cars in which it was shipped to other cars of the railroad company at some considerable period before the time of sale, claiming that such evidence would have reduced the verdict, or at least should have been submitted to the jury. Under what theory of law it should have been so submitted does not appear in appellants' brief; and whether the statement of the trial court was or was not correct in its suggestion and holding that

there was no averment in the affidavit of defense to support its ruling, we are satisfied that the transfer of the coke to other cars could not affect the right of the railroad company to recover demurrage charges for the full period of time that the coke was held in cars either of the forwarding companies or its own.

This disposes of all questions raised in the "Statement of Questions Involved," or argued in appellants' brief, and points not argued are presumed to be abandoned. The judgment will be affirmed.