## 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡

### Sydnor & Hundley, Inc. v. Wilson Trucking Corporation.

March 5, 1973.

Record No. 8046.

Present, All the Justices.

*Miles Cary, Jr.; Allan S. Buffenstein* (*Hirschler & Fleischer*, on brief), for plaintiff in error.

*Talmage N. Cooley; Roger B. Willetts* (*Edmunds, Freed, Cooley & Willetts*, on brief), for defendant in error.

Poff, J., delivered the opinion of the court.

We granted a writ of error to a final judgment order entered on December 20, 1971 by the trial court sitting without a jury finding for the defendant, Wilson Trucking Corporation, a common carrier, on a motion for judgment filed by the plaintiff, Sydnor & Hundley, Inc., a furniture merchant, seeking damages in the sum of $5,886.47 for the non-delivery of a tractor-trailer load of furniture purchased from Johnson-Carper Furniture Company of Roanoke.

On January 7, 1970 Johnson-Carper loaded Sydnor's order placed in early January 1970 aboard Wilson's trailer, f.o.b. Roanoke. The cargo arrived at Wilson's terminal in Richmond on January 8, 1970.

According to the testimony of Wilson's Richmond dispatcher Turner and two Wilson truck drivers, Kleis and Neeley, the trailer was "spotted", i.e., detached from the tractor and parked, at Sydnor's Richmond warehouse sometime before January 13; about 3:00 P.M. on January 13, at Turner's instruction, Kleis went to the warehouse to see if the trailer had been unloaded; Kleis called Turner and told him that unloading would not be completed until later that day; Turner later dispatched Neeley in a tractor to pick up the trailer; Neeley found the trailer empty, but because Sydnor's employees had quit work for the day, he left with the trailer without getting the delivery receipt signed; the next day, Kleis returned to Sydnor's warehouse, obtained a signature on a delivery receipt and delivered the receipt to Turner; the receipt became misplaced and was never found.

According to the testimony of Sydnor's employees, the trailer was never "spotted" at the warehouse, the furniture was never delivered, and a delivery receipt was never signed.

Sydnor's Vice President testified that approximately 60 days after the order was placed he received a "late notice" from Johnson-Carper. Checking the files, he found an "open" (unpaid) Johnson-Carper invoice dated "01/07/70" and containing the words, "SHIP TO ARRIVE IN JAN NO DEL ON SAT OR AFTER 4 DAILY". After searching the warehouse, the receiving records and the sales records, he advised Johnson-Carper that the merchandise had not been received.

In October 1970, Johnson-Carper sent Sydnor a letter asking payment. Sydnor's Assistant Controller and Internal Auditor, Accountant, spent a man week and his bookkeeper a hundred man hours searching the physical inventory and all of the files and records at Sydnor's retail outlets and Sydnor's parent corporation, Haynes Furniture Company, in Norfolk. Finding nothing to show that Sydnor had ever received or sold any part of the furniture, he ob-

tained from Johnson-Carper copies of the invoices and a memorandum of bill of lading and demanded of Wilson proof of delivery. Wilson was unable to produce the delivery receipt, and with Johnson-Carper threatening suit, Sydnor paid Johnson-Carper and on December 30, 1970 filed with Wilson a written "Standard Form for Presentation of Loss and Damage Claim".

The original bill of lading was never produced, but the memorandum of bill of lading, copy of which Johnson-Carper furnished Sydnor in October 1970, stated on its face that "This memorandum is an acknowledgment that a Bill of Lading has been issued . . .". It further provided:

> "It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth . . . in the applicable motor carrier classification or tariff. . . .
>
> "Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns."

When Wilson filed with the State Corporation Commission its tariff schedules as required by Code § 56-316, it included as a part of its filing the National Motor Freight Classification A-10 listing "Classes and Rules Applying on Freight Traffic Covered by Tariffs". On pages 257 and 258 of that document was a form in blank entitled "Uniform Straight Bill of Lading". Under the heading "Contract Terms and Conditions" the form contained in section 2 (b) language which reads in pertinent part as follows:

> "As a condition precedent to recovery, claims must be filed in writing with the . . . carrier . . . in case of failure to make delivery . . . within nine months after a reasonable time for delivery has elapsed; . . . where claims are not filed . . . in accordance with the

foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid." [1]

Without reaching consideration of the merits of the case, the trial court ruled that Sydnor was bound by this notice requirement and, having failed to give written notice on non-delivery within nine months after the lapse of a reasonable time for delivery, was not entitled to recover against the carrier.

Attacking the ruling in its assignments of error, Sydnor argues that there was no contractual relationship between Sydnor and Wilson; that assuming there was a contractual relationship, the nine-month notice requirement was not part of the contract terms and Sydnor gave notice within a reasonable time; and that even if the nine-month notice requirement were a part of the contract terms, Sydnor's written notice was timely filed.

■ With reference to a contractual relationship, Sydnor alleged in its motion for judgment that "by agreement, to which both plaintiff and defendant were parties, defendant was to deliver the merchandise" and that "by reason of the aforesaid agreement . . . it became the obligation of defendant to deliver . . . during the month of January". Sydnor cannot be heard to contradict its own pleadings. *Leslie* v. *Nitz*, 212 Va. 480, 484, 184 S.E.2d 755, 758 (1971); *Thrasher* v. *Thrasher*, 210 Va. 624, 628, 172 S.E.2d 771, 773-74 (1970); *Mc-Laughlin* v. *Gholson*, 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970); *Rohanna* v. *Vazzana*, 196 Va. 549, 84 S.E.2d 440 (1954).

■ Moreover, Sydnor, for whose benefit and at whose risk the cargo was being transported after it was loaded by the seller f.o.b. Roanoke, was a third party beneficiary to the contract of carriage, entitled to sue on the contract, bound by the terms of the contract, and subject to defenses arising out of the contract. Code § 55-22.

■ We must now decide whether the nine-month notice requirement was a part of the terms of the contract.

In reaching its finding in the affirmative, it was not necessary for the trial court to resolve the question whether Sydnor received the original bill of lading, a memorandum of which was retained by Johnson-Carper.

Code § 8.7-103, part of the Uniform Commercial Code, provides:

---

[1] In its brief, Sydnor mistakenly refers to this language as "the notice of loss provisions contained in § 2 (b) of the Uniform Straight Bill of Lading Act (Act)". Neither the Uniform Bills of Lading Act nor the Uniform Commercial Code in which it was subsumed contain this language.

"To the extent that any . . . tariff classification or regulation filed . . . is applicable, the provisions of this title are subject thereto."

Code § 8.1-309(3) provides:

"Reasonable provisions as to the time and manner of presenting claims and instituting actions based on the shipment may be included in a bill of lading *or tariff*." (Emphasis supplied.)

Here, the nine-month notice requirement was included in the form bill of lading filed by Wilson with its tariff schedules. With respect thereto, we reach three conclusions.

First, the nine-month notice requirement is not such a limitation upon liability as that forbidden by Code § 56-119. *Liquid Carbonic Co.* v. *Norfolk & Western Ry. Co.*, 107 Va. 323, 58 S.E. 569 (1907). And when the carrier complies with the publication requirements of Code § 56-316, the proscription of Code § 56-119 does not apply. *Peninsula Transit Corp.* v. *Jacoby*, 181 Va. 697, 26 S.E.2d 97 (1943).

Second, we find the nine-month notice requirement to be a "reasonable provision" within the meaning of Code § 8.7-309(3). Nothing in the record concerning this shipment in paticular or the freight industry in general justifies a finding otherwise. The Interstate Commerce Act finds it reasonable. 49 U.S.C. § 20 (11). Considering the need for uniformity and stability in commerce, it would be unreasonable for us to find it unreasonable.

Third, even if the bill of lading were never delivered to Sydnor, the bill of lading form containing the nine-month notice requirement, when published with tariff schedules filed with the State Corporation Commission, became a part of the contract of carriage in intrastate commerce, even as it does in interstate commerce when published with tariff schedules filed with the Interstate Commerce Commission. See *Atlantic Coast Line Ry. Co.* v. *Clinchfield Fuel Co.*, 94 F.Supp. 992 (W.D.S.C. 1951); *Eastern Motor Express* v. *A. Maschemeijer, Jr., Inc.*, 247 F.2d 826 (2d Cir. 1957); *Loveless Mfg. Co.* v. *Roadway Exp.*, 104 F.Supp. 809 (N.D.Okla. 1952); *Kellett* v. *Alaga Coach Lines*, 34 Ala.App. 152, 37 So.2d 137 (1948); *Thos. Foods, Inc.* v. *Penn. Ry. Co.*, 112 Ohio App. 76, 168 N.E.2d 612 (1960).

But Sydnor contends that, assuming it was bound by the nine-month notice requirement, its December 30, 1970 written notice was timely filed. Pointing to its large and continual merchandise turnover and its sophisticated, computerized inventory system, and notwith-

standing receipt of Johnson-Carper's "late notice" 60 days after the order was placed, Sydnor urges that it did not discover and could not have discovered non-delivery of the cargo until October 1970 when its Assistant Controller and Internal Auditor, Accountant made a second search of the warehouse and records.

Sydnor seems to argue that the nine-month period begins to run after the lapse of a reasonable time for discovery of non-delivery. But under the express language of the notice requirement, the period is triggered by the lapse of a reasonable time for delivery.

The trigger urged by Sydnor would be forever variable. What would be a reasonable time for discovery would depend in each case upon the volume of business and the complexity of the inventory system of a particular consignee. If the nine-month notice requirement is to function fairly and efficiently for both the carrier and the consignee, there must be a point of beginning, one that is readily determinable under a standard formula by both parties, and, if need be, by the courts.

We hold that the point of beginning must be at the expiration of a reasonable time for delivery following the consignee's receipt of the seller's invoice.

Here, the January 7, 1970 invoice Sydnor found unpaid in its files 60 days after the order was placed specified on its face that the merchandise was to be shipped to arrive in January, and the trial court found without evidence to the contrary that January was a reasonable time for delivery. We agree.

The nine-month notice period expired in October. Sydnor's December written notice was filed too late. The judgment is affirmed.

*Affirmed.*