COMMERCIAL SHEETMETAL COMPANY, INC., a Hawaii corporation, and INTERNATIONAL MARINE UNDERWRITERS, a Foreign corporation, Plaintiffs-Appellants, *v.* MATSON NAVIGATION COMPANY, a Hawaii corporation, Defendant-Appellee, and JOHN DOES 1-10, DOE PARTNERSHIPS, CORPORATIONS and/or OTHER ENTITIES 1-10, Defendants

NO. 10340

(CIVIL NO. 82806)

JANUARY 6, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiffs Commercial Sheetmetal Company, Inc. (Commercial), and its insurer, International Marine Underwriters (International) (collectively "plaintiffs") appeal the summary judgment dismissing their suit for tort and contract damages against defendant Matson Navigation Company (Matson). We affirm.

Viewed in the light most favorable to plaintiffs, *see Kang v. Charles Pankow Associates,* 5 Haw. App. 1, 675, P.2d 803 (1984), the facts are as follows: In August 1982 United States Steel Corporation (U.S. Steel) contracted with Matson to, and Matson did, ship and deliver galvanized sheetmetal from Oakland, California, to Commercial in Honolulu, Hawaii. While the sheetmetal was in Matson's custody, it suffered $7,695 in damages.

On June 28, 1983 Matson, at the request of International, extended the applicable period of limitations to February 16, 1984. However, it was not until May 11, 1984 when plaintiffs commenced this action against Matson for recovery of $7,695 damages for breach of contract and negligence.

Matson responded with a Rule 12(b)(6), Hawaii Rules of Civil Procedure (HRCP), motion to dismiss. Since matters outside the complaint were presented and considered, the motion was treated as a Rule 56, HRCP, motion for summary judgment which the lower court granted. Plaintiffs appealed.

The issues and our answers are:

I. Are the consignee and its insurer bound by the terms of the contract between the consignor and the carrier insofar as that contract specifies a deadline beyond which the consignee cannot assert its claim against the carrier for damages to the goods? Yes. Does it make a difference whether or not the consignee had notice of that deadline? No.

II. What is the deadline beyond which Commercial and International could not sue Matson for damages to the sheetmetal? February 16, 1984.

III. Does the February 16, 1984 deadline apply to both contract and tort claims? Yes.

I.

Plaintiffs contend that since Commercial was a consignee-noncontracting party they are not subject to the suit deadline specified in the U.S. Steel-Matson contract. We disagree. The only reason Commercial, as the consignee-noncontracting party, and International, as its insurer, had a cause of action against Matson is because Commercial is a third-party beneficiary of the U.S. Steel-Matson contract. As such, Commercial's and International's rights against Matson are defined in

the U.S. Steel-Matson contract. 14 Am. Jur. 2d *Carriers* § 552 (1964); 17 Am. Jur. 2d *Contracts* § 315 (1964). Here, the U.S. Steel-Matson contract is Matson's bill of lading dated August 9, 1982 covering shipment No. 757000 from U.S. Steel to Commercial. *See* 13 Am. Jur. 2d *Carriers* § 278 (1964).

Citing *Lord Electric Co., Inc. v. Pacific Intermountain Express Co.,* 282 Or. 335, 578 P.2d 776 (1978), plaintiffs also contend that since Commercial was the consignee-noncontracting party, they are not bound by the suit deadline specified in the bill of lading absent proof that they received a copy or knew of its terms. Again, we disagree. Plaintiffs have no rights against Matson except as third-party beneficiaries of the U.S. Steel-Matson contract. All of their rights against Matson derive from that contract whether or not they had knowledge of the contract's contents. Here, International had actual notice no later than June 28, 1983.

## II.

Matson's August 9, 1982 bill of lading provides in relevant part as follows:

> The Shipper, by receiving this document agrees that the . . . goods . . . throughout the entire time that they are in the custody of Carrier, are subject, to (i) the terms and conditions of Carrier's applicable tariffs, and (iv) . . . the provisions of the United States Carriage of Goods by Sea Act of 1936 shall govern the relationships . . . between the Shipper, Consignee, and Cargo Owner, and the Carrier, Master, and Vessel, in every contingency, whatsoever and whensoever appearing.

This incorporation of the United States Carriage of Goods by Sea Act of 1936 (COGSA), 46 U.S.C. §§ 1300-1315 (1976 and Supp. 1985), is specifically authorized by COGSA § 1312.

COGSA § 1303(6) provides in relevant part as follows: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods[.]"

Matson's applicable tariff is Freight Tariff No. 16, FMC-F No. 8, effective May 20, 1982. It provides in relevant part as follows:

> 19. *TIME FOR SUIT*
> In any event Carrier and the Vessel shall be discharged from all liability in contract and in tort in respect of loss, damage, delay,

misdelivery or conversion unless suit is brought within one year after delivery of the Goods[.]

Thus, under both the bill of lading and the applicable tariff, the suit deadline was one year after the date of delivery in August 1983. At International's request, however, Matson extended it to February 16, 1984.

### III.

As noted above, COGSA § 1303(6)'s suit deadline applies to "all liability." That phrase encompasses both contract and tort liability. Moreover, Freight Tariff No. 16's suit deadline specifically applies to "all liability in contract and in tort[.]"

### IV.

Affirmed.

*Leighton K. Oshima* (*Grant K. Kidani* and *Shelton G. W. Jim On* on the briefs; *Kidani, Oshima & Wong* of counsel) for appellants.

*Mark B. Desmarais* (*John R. Lacy* with him on the brief; *Goodsill, Anderson, Quinn & Stifel* of counsel) for appellee.