**RIO GRANDE MOTOR WAY, INC., Petitioner,**

v.

**RESORT GRAPHICS, INC., f/k/a Mountain Mats, Inc., Respondent.**

No. 85SC212.

Supreme Court of Colorado, En Banc.

July 27, 1987.

Steven E. Napper, Denver, for petitioner.

Johnroe, Claassen & McCargar, Sarah D. Claassen, Steamboat Springs, for respondent.

KIRSHBAUM, Justice.

We granted certiorari to review the judgment of the Court of Appeals in *Resort Graphics, Inc. v. Rio Grande Motor Way, Inc.*, 707 P.2d 1011 (Colo.App.1985), reversing the trial court's order granting a motion for summary judgment in favor of the petitioner, Rio Grande Motor Way, Inc. (Rio Grande), and denying a motion for summary judgment filed by the respondent, Resort Graphics, Inc., against Rio Grande. The trial court concluded that Resort Graphics' failure to comply with a notice provision of the bills of lading under which the goods had been shipped barred its claim. The Court of Appeals held that the provisions of the bills of lading did not apply to Resort Graphics' claim. We reverse and remand with directions to reinstate the judgment of the trial court.

I

In August of 1981, pursuant to two uniform domestic bills of lading, Mountain Tops, Inc. of Boothbay Harbor, Maine, sent two shipments of clothing to Resort Graphics [1] in Steamboat Springs, Colorado. Rio Grande, the carrier, tendered delivery of the shipments on August 10 and on August 17, 1981, but Resort Graphics refused to accept them on the asserted basis that they constituted unauthorized returns of goods sold to Mountain Tops. By notices dated August 18 and September 1, Rio Grande informed Mountain Tops that the shipments had been refused.

On August 28, Mountain Tops sent a letter to Resort Graphics explaining why the goods had been returned. The letter also stated that the "shipper" required directions by September 17 for the disposal of the goods, that Mountain Tops would not be responsible for any unpaid freight and storage charges and that Mountain Tops would dispose of the goods in the most commercially reasonable manner available if it did not receive directions by September 17 from Resort Graphics.

On October 28, Mountain Tops sent a letter to Rio Grande asking that the goods be held until Mountain Tops and Resort Graphics resolved their dispute. On December 7, Rio Grande sent notices of undelivered freight to Mountain Tops that the goods would be sold at auction pursuant to the terms of the bills of lading if disposition, including guarantee of all charges, were not received within thirty days. On January 11, 1982, Rio Grande sent a certified letter to Mountain Tops demanding payment of all freight and storage charges within ten days to prevent disposition of the goods. A copy of that letter was sent to Resort Graphics. The goods were subsequently sold.

On July 18, 1982, Resort Graphics submitted a claim form to Rio Grande for the wholesale value of the goods, indicating that it had received no notification regarding the shipments since they were refused in August 1981. On December 7, 1982, Resort Graphics filed a complaint against Rio Grande for the wholesale value of the goods on the ground that Rio Grande failed to comply with the provisions of sections 4–7–308(1) and 4–7–210(2), 2 C.R.S. (1973), regarding enforcement of carrier's and warehouseman's liens. Rio Grande filed a motion for summary judgment, asserting that Resort Graphics' claim was barred as a matter of law because it did not comply with the notice provisions of the uniform straight bills of lading pursuant to which the goods had been shipped. Resort Graphics also filed a motion for summary judgment, asserting that Rio Grande's failure to follow state statutory provisions required entry of a judgment against Rio Grande. The trial court concluded that the terms of the bills of lading governed, granted Rio Grande's motion and dismissed Resort Graphics' claim. The Court of Appeals reversed, reasoning that Rio Grande's conduct after the refusal of delivery was governed by Colorado law.

II

It is not disputed that interstate transportation of goods is governed by the Interstate Commerce Act and the Carmack Amendment of 1906, 49 U.S.C. § 11707

---

1. On September 1, 1981, Resort Graphics changed its name from Mountain Mats, Inc.

(1982). The Carmack Amendment was adopted to achieve uniformity in rules governing interstate shipments, including the rules governing loss or injury to the property shipped. *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). It codifies the law regarding the liability of carriers and exclusively governs the subjects which it covers. *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Allied Van Lines, Inc. v. Smith*, 28 Colo.App. 85, 470 P.2d 926 (1970).

■ Prior to shipping goods in interstate commerce, a common carrier must issue a bill of lading or receipt for the property received for transportation. 49 U.S.C. § 11707(a)(1). The Interstate Commerce Commission prescribes the form in which such receipts or bills of lading must be issued. *See* 49 C.F.R. § 1035.1 (1986); *In re Bills of Lading*, 52 I.C.C. 671 (1919), and subsequent modifications. While the parties may in some circumstances make special arrangements regarding shipments of goods, the terms of the bill of lading control their conduct as a matter of federal law. *See Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Dettlebach*, 239 U.S. 588, 36 S.Ct. 177, 60 L.Ed. 453 (1916); *Southern Ry. Co. v. Prescott*, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836 (1916).

■ The bills of lading issued in this case contain provisions required by the Interstate Commerce Commission that establish the duties and obligations of a carrier and specify requirements of notice for asserting claims against a carrier. Section 4 provides in general that when a party entitled to receive goods does not accept them, the carrier may store the goods subject to a lien for freight and other charges, including storage charges, and that under certain circumstances the carrier may sell the goods and apply the proceeds to the payment of freight, storage or other charges.[2]

---

2. Section 4 of the uniform bills of lading issued in this case provides as follows:

SEC. 4A. Property not removed by the party entitled to receive it within the free time (if any) allowed by tariffs, lawfully on file (such free time to be computed as therein provided), after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given, and after placement of the property for delivery at destination has been made, or property not received, at time tender of delivery of the property to the party entitled to receive it has been made, may be kept in vessel, vehicle, car, depot, warehouse or place of business (delivery) of the carrier, subject to the tariff charge for storage and to carrier's responsibility as warehouseman, only or at the option of the carrier, may be removed to and stored in a public or licensed warehouse at point (place) of delivery of [sic] other available point (place), or if no such warehouse is available at point of delivery or other available point, then in other available storage facility, at the cost of the owner and there held without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage. In the event consignee cannot be found at address given for delivery, then in that event, notice of the placing of such goods in warehouse shall be mailed to the address given for delivery and mailed to any other address given on the bill of lading for notification, showing the warehouse in which such property has been placed, subject to the provisions of this paragraph.

SEC. 4B. Where nonperishable property which has been transported to destination hereunder is refused by consignee or the party entitled to receive it upon tender of delivery, or said consignee or party entitled to receive it fails to receive or claim it within 15 days after notice of arrival shall have been duly sent or given, the carrier may sell the same as public auction to the highest bidder, at such place as may be designated by the carrier: PROVIDED, That the carrier shall have first mailed, sent, or given to the consignor notice that the property has been refused or remains unclaimed, as the case may be, and that it will be subject to sale under the terms of the bill of lading if disposition be not arranged for, and shall have published notice containing a description of the property, the name of the party to whom consigned, or, if shipped order notify, the name of the party to be notified, and the time and place of sale, once a week for two successive weeks, in a newspaper of general circulation at the place of sale or nearest place where such newspaper is published: PROVIDED, That 30 days shall have elapsed before publication of notice of sale after said notice that the property was refused or remains unclaimed was mailed, sent or given.

....

SEC. 4D. Where the procedure provided for in the two paragraphs last preceding is not possible, it is agreed that nothing contained in said paragraphs shall be construed to abridge the right of the carrier at its option to sell the property under such circumstances and in such manner as may be authorized by law.

Section 4B specifically prescribes procedures to be followed in connection with a sale when goods have been refused by the consignee. Interstate Commerce Commission regulations prescribe principles and practices for investigating and disposing of loss and damage claims and processing salvage. 49 C.F.R. Part 1005 (1986).

The bill of lading thus expressly creates a lien in favor of a carrier on refused property for freight and storage charges. It also expressly authorizes the subsequent sale of such property, and federal regulations address the issues of sale of goods to satisfy the lien. Thus the rights of the carrier and the consignee, as well as the procedures for implementing those rights, are fully covered by federal law.

■ Upon tendering delivery of the goods to Resort Graphics, Rio Grande's responsibility as carrier terminated and its responsibility as warehouseman commenced. *General Am. Transp. Corp. v. Indiana Harbor Belt R. Co.*, 191 F.2d 865 (7th Cir.1951), *cert. denied*, 343 U.S. 905, 72 S.Ct. 636, 96 L.Ed. 1324 (1952). However, interstate transportation of the goods and Rio Grande's responsibilities under the bills of lading continued after tender of delivery. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Dettlebach*, 239 U.S. 588, 36 S.Ct. 177, 60 L.Ed. 453; *Southern Ry. Co. v. Prescott*, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836; *see also Upjohn Co. v. Timpany*, 168 N.J.Super. 283, 402 A.2d 979 (1979) (carrier's responsibilities in performing function as warehouseman governed by bill of lading). In these circumstances, state statutes regulating carrier's or warehouseman's liens are preempted by the applicable federal law. *See* 1 S. Sorkin, *How to Recover for Loss or Damage to Goods in Transit* § 4.06 n. 8 (1987); § 4–7–103, 1 C.R.S. (1973) (state statutes governing bills of lading and liens subject to applicable federal statutes or regulations). *See also Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; *Huddy v.*

*Railway Express Agency, Inc.*, 181 S.C. 508, 188 S.E. 247 (1936). Resort Graphics relies on *Central R. Co. of New Jersey v. Schick*, 38 F.2d 968 (3d Cir.1930), for the proposition that in the absence of controlling federal law state law governs. However true that general proposition might be, it is clear that specific provisions of the bills of lading governing interstate transportation of goods that are required by federal regulations are applicable in this case.

■ A party possessing an interest in goods moving in interstate commerce is entitled to insist upon compliance with the terms of the applicable bill of lading. *American Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462 (6th Cir.1970); *Sydnor & Hundley, Inc. v. Wilson Trucking Corp.*, 213 Va. 704, 194 S.E.2d 733 (1973). The carrier is liable for a failure to comply with those terms. *Id.* Thus, any claim for loss or damages by Resort Graphics must be predicated on Rio Grande's failure to fulfill its obligations under the terms of the bills of lading. *See American Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462 (consignee's claim based on interstate contract of carriage); *Commercial Sheetmetal Co. v. Matson Navigation Co.*, 711 P.2d 738 (Haw.Ct.App.1986) (consignee's rights derive from bill of lading whether or not it has knowledge of its contents); *see also Perini-North River Assoc. v. Chesapeake & Ohio Ry. Co.*, 562 F.2d 269 (3d Cir.1977); *Bethlehem Steel Corp. v. Artim Transp. System, Inc.*, 430 N.E.2d 1185 (Ind.App.1982). As such, Resort Graphics, as consignee, is bound by its terms. *See Commercial Sheetmetal Co. v. Matson Navigation Co.*, 711 P.2d 738; *American Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462; *contra Lord Electric Co. v. Pacific Intermountain Express Co.*, 282 Or. 335, 578 P.2d 776 (1978).

SEC. 4E. The proceeds of any sale made under this section shall be applied by the carrier to the payment of freight, demurrage, storage, and any other lawful charges and the expense of notice, advertisement, sale, and other necessary expense and of caring for and maintaining the property, if proper care of the same requires special expense, and should there be a balance it shall be paid to the owner of the property sold hereunder.

The trial court correctly held that Resort Graphics' failure to file a written claim within the express time period required by the bills of lading bars assertion of the claim.[3] The terms of the bills of lading require that any claim for "loss, damage, injury or delay" must be filed with the carrier within nine months after delivery or, in the case of failure to make delivery, within nine months after a reasonable time for delivery has elapsed. The coverage of this provision is broad enough to encompass the type of claim asserted by Resort Graphics here. *American Ry. Express Co. v. Fashion Shop, Inc.,* 10 F.2d 909 (D.C.Cir.1926) (goods sold after delivery refused); *Bethlehem Steel Corp. v. Artim Transp. System,* 430 N.E.2d 1185 (goods stolen after tender of delivery); *see Fleshnar & Adar v. Southern Ry. Co.,* 160 Ga. 205, 127 S.E. 768 (1925) (goods sold for freight charges after delivery refused). As a condition precedent to recovery, Resort Graphics was required to file its claim with Rio Grande within nine months of tender of delivery. *See Watts v. Southern Ry. Co.,* 139 S.C. 516, 138 S.E. 290 (refusal of consignee to accept goods constitutes failure to deliver), *cert. denied,* 274 U.S. 749, 47 S.Ct. 764, 71 L.Ed. 1331 (1926); *see also American Ry. Express Co. v. Fashion Shop, Inc.,* 10 F.2d 909; *Ryder Truck Lines, Inc. v. Consolidated Rail Corp.,* 580 F.Supp. 22 (D.Ill.1984) (nine months runs from date of delivery even though indemnity claim accrued later); *cf. Terminal Transport Co. v. Burger Chef Systems, Inc.,* 133 Ga.App. 608, 211 S.E.2d 788 (1974) (nine months commenced when plaintiff received notice of improper delivery of stored goods because plaintiff entitled to presume that goods still stored).

It is undisputed that Resort Graphics did not file a claim with Rio Grande within nine months of tender of delivery. Therefore, the trial court was correct in entering summary judgment in favor of Rio Grande. Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded with directions to reinstate the judgment of the trial court.

**3.** Section 2B of the bills of lading provides as follows:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in the case of export traffic, within nine months after delivery at port [of] export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.