# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### TOWNSEND v. BEATRICE CEMETERY ASS'N.

#### (Circuit Court of Appeals, Eighth Circuit.   June 20, 1911.)

#### No. 2,932.

CEMETERIES (§ 5*)—ASSETS EXEMPT FROM EXECUTION—PURCHASE OF LAND—PURCHASE PRICE—TRANSFER OF DEBT—EFFECT.

Cobbey's Ann. St. Neb. 1907, § 4227, declares that land appropriated for a cemetery shall be exempt from execution, and section 4223 provides that, after paying for such land, all future receipts and income shall be devoted exclusively to improving the cemetery, that no debts shall be contracted in anticipation of future receipts except for originally purchasing, laying out, inclosing, and embellishing the grounds and avenues and erecting buildings, etc., for which debts may be contracted not exceeding $35,000 in the whole to be paid out of future receipts. *Held* that, under such sections, the receipts from sales of lots were first subject to the payment of any debt contracted for the purchase price of the cemetery property, and hence where a cemetery association borrowed money from plaintiff with which to take up purchase-money notes, executed to its vendor of the cemetery land, and the money so borrowed was used for that purpose, the liability of the receipts followed the debt, and plaintiff was entitled to have them applied to the payment of his notes.

[Ed. Note.—For other cases, see Cemeteries, Dec. Dig. § 5.*]

In Error to the Circuit Court of the United States for the District of Nebraska.

Action by W. J. Townsend against the Beatrice Cemetery Association. Judgment for defendant, and plaintiff brings error. Reversed.

Richard S. Horton (Hugh J. Dobbs, on the brief), for plaintiff in error.

E. O. Kretsinger, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge.   The parties are arranged in this court as they were in the court below, the plaintiff in error being the plaintiff in the Circuit Court, and the defendant in error being the defendant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

188 F.—1

in the Circuit Court, and they will hereafter be referred to as plaintiff and defendant, respectively.

March 20, 1889, the plaintiff recovered a judgment in the Circuit Court for the District of Nebraska against the defendant for the sum of $5,082.66 upon a promissory note executed by the defendant and by it delivered to the plaintiff. An execution was issued upon the judgment and returned "unsatisfied for want of property whereon to levy." Subsequently the plaintiff, as authorized by section 916 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 684), instituted, pursuant to the laws of Nebraska, proceedings in aid of execution in the Circuit Court. A jury was waived by stipulation in writing, and upon issue framed the case was tried to the court, resulting in a judgment dismissing the proceedings in aid of execution at plaintiff's cost. The present writ of error challenges the correctness of that judgment.

The record discloses that the defendant is a corporation organized under the laws of ·Nebraska as a cemetery association; that as such corporation it became the owner, by conveyance to it in fee, of two tracts of land near the city of Beatrice, Neb., one containing 6 acres, the other 80 acres. These tracts of land were surveyed, platted, and dedicated to the public use as cemeteries, and have since been devoted to such use.

The 80-acre tract was purchased in April, 1887, from the heirs of Hugh N. Cross. The association, in addition to a cash payment at the time of the purchase, executed two promissory notes to A. W. Cross, representing the heirs of Hugh N. Cross, for the balance of the purchase price. Two years later, these notes were renewed. August 14, 1891, the association took up these renewal notes held by Cross; the money for that purpose having been procured from the plaintiff. The association at the same time executed and·delivered to the plaintiff the promissory note upon which the judgment was obtained.

By the laws of Nebraska (Cobbey's Annotated Statutes 1907, § 4227), it is declared that lands appropriated and ˉset apart for burial grounds shall not be subject to sale on execution. Another statute of that state (Cobbey's Annotated Statutes 1907, § 4223), relating to the formation and powers of cemetery associations, declares:

"Such associations shall be authorized to purchase or take, by gift or devise, and hold lands exempt from execution and from any appropriation to public purposes, for the sole purpose of a cemetery, not exceeding three hundred and twenty (320) acres, which shall·be exempt from taxation if used exclusively for burial purposes, and in no wise with a view to profit. After paying for such land, all the future receipts and income of such association, whether from the sale of lots, from donations, or otherwise, shall be applied exclusively to laying out, protecting, preserving and embellishing the cemetery and the avenues leading thereto, and to the erection of such building or buildings, vault or vaults, as may be necessary for the cemetery purposes, and to paying the necessary expenses of the association. No debts shall be contracted in the anticipation of future receipts except for originally purchasing, laying out, inclosing and embellishing the grounds and avenues and erecting buildings and vaults for which a debt or debts may be contracted, not exceeding thirty-five ($35,000.00) thousand dollars in the whole, to be paid out of future receipts."

The defendant contends that the money in its possession received from the sale of lots is exempt under the statutes above referred to, and cannot be taken under execution or by proceedings in aid of execution. The court made special findings of fact, and, as the case is here presented, the question to be decided is whether the facts specially found by the court supported the judgment.

Without repeating the findings at length, it is sufficient to say that the matters admitted in the pleadings, and those specially found by the court, present a case where the cemetery association, as it was authorized to do, bought land for a cemetery and gave its notes for the purchase price; that the cemetery is used solely as such, and in no wise with a view to profit. As proceeds of lots sold, there is now in the hands of the association a fund amounting to the sum of $2,209.22.

The sole controversy relates to the right of Townsend to have the proceeds of sales of lots in the cemetery applied to the satisfaction of his judgment, for the lands themselves are clearly exempt under the statute above mentioned. If the statute contained no provision upon the subject, it might perhaps be argued that the proceeds of the sale of lots would so far stand in the place of land as to be exempt. The statute, however, does not leave the matter to implication, but makes direct and complete provision in regard to the disposition to be made of all future receipts. Following the declaration that the land should be exempt, the statute contains two closely associated provisions. The first of these provisions is that, "after paying for such lands," all the future receipts, whether from the sale of lots or otherwise, "shall be applied exclusively" to the improvement and embellishment of the cemetery, etc. We think it entirely clear that these provisions contemplate that the first or preferred call upon the receipts shall be the payment for the land. In other words, it crystallizes into law two sound business principles: One, that, as the acquisition of land for a cemetery comes before its improvement and embellishment, the cost of this acquisition comes before the cost of improving and embellishing; and, the other, that, after the land is paid for, the receipts from the sale of lots shall be applied exclusively to paying for improvements and embellishment—that is to say, shall be exempt from all other application.

The next closely associated provision declares that no debts shall be contracted in anticipation of future receipts, "except for originally purchasing," improvement, and embellishment, "for which a debt or debts may be contracted not exceeding $35,000.00 in the whole, to be paid out of future receipts." This is plainly a limitation upon the power of the association to contract debts except for the purposes named, and is also a grant of power to contract debts for those purposes, and to do so in anticipation of future receipts, and to pay such debts out of those receipts. Taking the two provisions together, it is quite clear, we think, that the receipts from the sale of lots, unlike the land itself, are not wholly exempt, but are to be applied in paying debts contracted for the purposes named in the statute. The question, therefore, is: Is the debt here in question one of those which the statute contemplates shall be paid out of the receipts? It is in-

sisted that, as the money secured from Townsend was received and used by the association to pay the purchase price notes for the land, the debt to him is a purchase price debt within the meaning of the statute, and therefore is one which is payable out of the receipts. There can be no doubt, we think, that Cross, the original purchase price creditor, could have compelled the satisfaction of his claim out of the proceeds of the sale of lots. Nor can there be any question that an assignee of that claim would have the same right. As already suggested, the statute clearly makes the payment of the purchase price a lawful call, and a first call, upon the receipts, and, in our view, this incident of the debt is one which would pass with it to whomsoever succeeded to its ownership.

If Cross, the owner of the land, had refused to sell it otherwise than for cash, and the association had borrowed the necessary purchase money from Townsend, and therewith made the purchase price, there can be no doubt that such debt would be one contracted for the purchase price within the meaning of the statute, and would be payable out of future receipts in like manner as if the owner of the land had sold it on credit. When it is recalled that such an association has no capital stock, is not maintained for profit, and can acquire and hold property only for cemetery purposes, it would seem that the authority to contract debts for the purchase of the site and for its improvement and embellishment ought to be so interpreted as reasonably to admit of the accomplishment of these purposes. We may reasonably assume that the Legislature must have been cognizant of the fact that owners of land are sometimes unwilling to sell on credit, and are sometimes unable to do so by reason of having immediate use for the purchase price. The Legislature also must have known that materialmen and laborers would not infrequently be unwilling or unable to engage in the work of improvement or embellishment of a cemetery if they had to wait for their money. In the light, therefore, of the character of such an association, and its probable original lack of funds, and in the light of the object to be attained, we think the provision respecting the contracting of debts, when properly construed, includes the borrowing of money to pay the purchase price, or to pay for improvements quite as much as it does the incurring of obligations directly to the seller, materialmen, and laborers. And, if this be so, then where notes, duebills, or kindred obligations are at first given to the vendor, the materialmen, or the laborers, and the association is unable to meet them when due, why may it not borrow money to pay them in like manner as it could have done in the first instance? Is it not in substance and effect dealing with the same matter and in substantially the same way? Is its situation or its duty to the public, or to the owners of lots, affected injuriously because it arranges to have its lawful obligations carried by one instead of another, or by one instead of many? Or because it relieves itself from the immediate application of receipts for payment of existing obligations where there is need for the use of such receipts in the proper care, preservation, and improvement of the cemetery? And, in this case, had Cross chosen so to do, he doubtless could have enforced the payment of his

purchase price notes out of the receipts of the sale of lots; but, had he done so, the improvement of the property would necessarily have been suspended altogether, or at least greatly delayed. We have already seen that the purchase price debt, under the statute, is given the first call upon the receipts. That being true, is it reasonable to hold that the Legislature meant to say, if Cross was unwilling or unable to carry the debt·after it became due, that the association could not arrange with another to carry the debt until it could be paid, without injury to the cemetery or the lot holders? It is not at all likely that such an arrangement could be made, if the one whose aid was sought would have no right to enforce his claim, and it seems to us an unwarranted construction of the statute to hold that the caretaker could enforce payment out of the receipts of the sale of lots of his pay for the last month, or year, but that one who advanced the money to tide the matter over for another month, or year, in order that necessary improvements might be made, should be without right to secure its repayment out of the receipts. As we view it, the position insisted upon by the association, that the receipts cannot be subjected to the payment of such a debt, would defeat the very object of its existence, or, in any event, greatly imperil or impair the attainment of that object.

But it is insisted that Townsend did not furnish the money for the distinct purpose of paying Cross' demand, and that there was no arrangement that it should be so applied. The·special finding does not so state. On the contrary, it does state, not only that the money obtained from Townsend's note was so used by the association on the very day that it was borrowed and the note given, but also that in the judgment on the note it was expressly found and adjudicated that such proceeds were received by the association for that purpose, as well as actually used therefor. Such a finding, in an action where the validity of the note was necessarily in question, reasonably means that the money was solicited and obtained for that purpose. Moreover, that judgment stands as a conclusive adjudication that that was a lawful purpose within the meaning of the statute, and, if it was a lawful purpose within the restrictions of the statute, it is payable out of the receipts from the sale of lots.

We do not think the doctrine of subrogation need be here invoked, because, as we view it, the debt in question is a "purchase price" debt within the meaning of the statute: that is, it is entirely founded upon the original purchase of the land, and is, in substance and effect, a prolongation of the obligation then incurred. In morals it stands upon the same footing, in law it ought to do so, and in our 'view the statute so declares when it is interpreted in a way which is essential to the attainment of its object.

The judgment of the Circuit Court must be reversed.