17 N.J. Super. 148 (1951)
85 A.2d 548
PUBLIC SERVICE ELECTRIC & GAS COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
READING COMPANY, A FOREIGN CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 24, 1951.
*149 Mr. Carl T. Freggens (Mr. Luke A. Kiernan, appearing), attorney for plaintiff.
Messrs. Lum, Fairlie & Foster (Mr. Raymond W. Troy, appearing), attorneys for defendant.
COLIE, J.S.C.
By agreement of counsel this cause was tried without a jury. The plaintiff seeks recovery for damages to three current limiting reactors manufactured by General Electric Company and admittedly damaged in transit between Pittsfield, Massachusetts, the point of origin, to Port Reading, New Jersey, the terminal point. The three reactors passed over the lines of other carriers. Two of the reactors were delivered on June 6, 1948, to the plaintiff's siding at Port Reading. On June 9, the third reactor was delivered at the same place. Ultimately, the three reactors were returned to the General Electric Company at Pittsfield, Massachusetts, where, excepting for salvage value, they were scrapped and new reactors manufactured in their stead. In the damaged condition, the reactors were useless to the plaintiff. The original cost of the three reactors was $20,982. The cost of the replacements, after allowing for the salvage value, was $20,858.62.
The reactors were shipped under uniform straight bills of lading as required by 49 U.S.C.A., sec. 20 (11), on the back of which, as sec. 2 (b), appears the following: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property * * *. Where claims are not filed * * * in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid." The reverse side of the bill of lading is entitled "Contract terms and conditions" and the rights and liabilities as between the plaintiff and defendant arise from that contract. The issue submitted to the court was whether or not the plaintiff was *150 entitled to maintain this suit in light of the undisputed fact that written claims for the losses were not filed until December 19, 1949, a period of approximately 18 months after the delivery of the three reactors.
Prior to the trial, the defendant moved for summary judgment for failure of the plaintiff to file a claim or claims for damage in writing within nine months. That motion was denied. Public Service Electric & Gas Co. v. Reading Company, 13 N.J. Super. 383 (Law Div. 1951). At the trial it appeared without question that upon arrival of the first two reactors at Port Reading, representatives of both plaintiff and defendant examined the damaged reactors. Thereafter, when the third reactor arrived, there was an examination by representatives of both of the parties on June 28, 1948. At the trial of the case, Henry W. Codding, an engineer in the electric department of the plaintiff testified as follows:
"Q. In that connection, with respect to the useability of these reactors, did you say anything to any of the railroad officials as to whether or not these concrete reactors could be used in a damaged condition?
A. We had some conversation about it and on my first glance when I saw the condition, to my mind they were useless, could not be used, and since I never heard of anyone being able to repair the concrete there was nothing else to be done except to have them remanufactured and I think I expressed that opinion in their presence, that the reactors were useless, to the best of my recollection about that."
There is, in the entire record, no testimony which, by any reasonable construction, can be construed as a claim.
In Anchor Line, Limited, v. Jackson, 9 F.2d 543 (C.C.A. 2, 1925), that court, speaking through Judge Hand, said after reviewing a number of federal decisions:
"The upshot of these cases is that notice that the goods have been damaged is not notice of a claim for recoupment. The result is perhaps a narrow interpretation, and has not been established in this circuit without strong opposition. Its existence is, however, unquestioned, and it seems to us undesirable by nice distinctions to invite *151 perpetual litigation in its application. There can, indeed, be no doubt that it is one thing to advise a ship of the fact that she has discharged damaged goods and another that you mean to hold her for the loss. The two may shade into eath other, but they are quite distinct. We may concede that notice of damage ordinarily presupposes that the consignee is contemplating a claim, but it is not equivalent even to an assertion that he will make one in the future; certainly it is not a claim in praesenti. He may conclude that he has no rights against the ship under the bill of lading, or that, if he has, it is not worth his while to press them. A protest is not a claim." (Italics this court's.)
The plaintiff relies heavily upon the case of Hopper Paper Co. v. Baltimore & O.R. Co., 178 F.2d 179 (C.C.A. 7, 1949), a case in which the provision of 49 U.S.C.A., sec. 20 (11) was under consideration. The court said:
"As to the claim that the statute is a limitation law, it will suffice to say it has been held that the above-quoted language was not intended to operate as a statute of limitation, Louisiana & Western Railroad Co. v. Gardiner, 273 U.S. 280, 284, 47 S.Ct. 386, 71 L.Ed. 644, and that the general rule in cases such as ours is, that failure to give notice of a claim for damages or loss in accordance with a stipulation in a contract for the shipment of goods is excused, or is inapplicable, where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice could give. 9 Am. Jur. § 803, p. 920. See also 13 C.J.S., Carriers, § 240 (a), p. 487."
In the Hopper case, the court found as a fact that the defendant and its agents were fully aware and cognizant of the existence of all the facts surrounding the wreck and destruction of the carload of paper. In such a situation, a formal notice by plaintiff to the defendant would not have accomplished anything more. That case is distinguished from the instant case on a number of grounds, one of which is that in the Hopper case, the damage occurred in a railway wreck between two of the defendant's trains, whereas in the instant case the damage may have occurred either while the reactors were on the trackage of the defendant or on that of an intermediate carrier, of which there were several as indicated by the arrival notices introduced in evidence. As said in Anchor Line v. Jackson, supra, a protest is not a claim, no *152 more is notice of damage a claim for damages. There is no evidence in this case, written or verbal, of a claim. The first and only claims were by letters of the plaintiff to the defendant dated December 14, 1949.
In Insurance Co. of North America v. Newtowne Mfg. Co., 187 F.2d 675, the United States Court of Appeals for the First Circuit (Mass. 1951), in dealing with the question of whether or not a written claim had been filed, said:
"In the leading case of Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 1916, 241 U.S. 190, 36 S.Ct. 541, 545, 60 L.Ed. 948, the Court took a somewhat indulgent view as to what constituted the filing of a claim `in writing.' It held that the document need not be `in a particular form' since the condition `is addressed to a practical exigency and it is to be construed in a practical way.' 241 U.S. at page 198, 36 S.Ct. at page 545, 60 L.Ed. 948. In that case, in view of prior correspondence between the shipper and carrier, it was held that the shipper had satisfied the requirement of a claim in writing by sending a telegram to the carrier a few days after the alleged loss of the goods stating: `We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we cannot handle.' The Court pointed out that in the preceding telegrams which had passed between the parties `the shipment had been adequately identified, so that this final telegram, taken with the others, established beyond question the particular shipment to which the claim referred, and was in substance the making of a claim within the meaning of the stipulation,  the object of which was to secure reasonable notice.' But in the case at bar, the documents which Newtowne presented to the carrier's claim agent all antedated the alleged loss; they did not show on their face the happening of any loss which might be the subject of a claim. Their presentation to the claim agent cannot be deemed a substantial compliance with the requirement of a claim `in writing' which, at the minimum, we think, must be a written document, however informal in expression, indicating an intention on the shipper's part to claim reimbursement from the carrier for a loss asserted to have occurred in the past, and sufficiently identifying the shipment in question either on the face of the document or by reference to previous correspondence between the parties. Cf. Bronstein v. Payne, 1921, 138 Md. 116, 113 A. 648; United Mutual Fire Ins. Co. v. Railway Express Agency, Inc., 1948, 323 Mass. 354, 82 N.E.2d 215; Watts v. Southern Ry. Co., 1926, 139 S.C. 516, 138 S.E. 290."
The case of Hyatt Roller Bearing Co. v. P.R.R. Co., 92 N.J.L. 94 (Sup. Ct. 1918); affirmed 92 N.J.L. 631 *153 (E. & A. 1919) upon which the plaintiff relies, is distinguishable in that the court there found as a fact that the information as to the loss was substantially a claim within the meaning of the language quoted. In the instant case the court finds as a fact that there was no testimony which could, by any reasonable inference, be deemed to be a claim within the meaning of the applicable provision in the bill of lading.
Judgment for the defendant.