93 N.J. Super. 14 (1966)
JOHNSON & DEALAMAN, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
WM. F. HEGARTY, INC., A NEW JERSEY CORPORATION, DEFENDANT, AND NORWALK TRUCK LINES, INC., A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1966.
Decided November 25, 1966.
*16 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. John J. O'Donnell argued the cause for appellant (Messrs. Egan, O'Donnell, Hanley & Clifford, attorneys).
Mr. Hilton P. Goldman argued the cause for respondent (Messrs. Krowen, D'Amico & Chernin, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Johnson & Dealaman, Inc. brought an action in the county district court to recover the value of a section of a boom delivered in damaged condition by defendant Norwalk Truck Lines, Inc. (Norwalk) to Wm. F. Hegarty, Inc. (Hegarty). Hegarty was sued in contract and Norwalk for negligence. The trial judge entered judgment in favor of Johnson & Dealaman, Inc.; there was a no cause judgment in favor of Hegarty, apparently for *17 the reason that it had paid plaintiff for replacing the damaged boom. Norwalk's appeal is against plaintiff only; it concedes that the judgment in Hegarty's favor was proper.
The appeal comes before us on a statement in lieu of record prepared by the trial judge. R.R. 1:6-3. Plaintiff and Hegarty are New Jersey corporations, and Norwalk, a common carrier, is a Delaware corporation with a registered New Jersey agent. Plaintiff is a distributor for Thew Shovel Co., of Lorain, Ohio, and, as such, had it ship a 20' center section of boom to Hegarty via Norwalk. Norwalk delivered the boom section to Hegarty on September 11, 1963. It was in damaged condition, and this was noted on the delivery slip by the writing: "1 Bent Strut on Boom  Bottom Cord Bent." That fact was known to Norwalk even before the boom section was delivered to Hegarty; William McLaughlin, manager of its North Bergen Terminal, testified that a Norwalk employee had seen the damage and taken pictures of it at Norwalk's warehouse prior to delivery to the consignee.
Admitted in evidence was a "Loss or Damage Inspection Report" showing that there had been an inspection on September 11, 1963, and that the consignee had noted the damage on the delivery receipt given to Norwalk's driver. The report described the damage and noted that there was "Possibility of salvage if returned to shipper. Consignee cannot repair." The report was signed by W.F. Hegarty, Jr., on behalf of the Hegarty company, and by one R.T. Chamberlain as inspector. The boom section had been shipped under a uniform domestic bill of lading, one of whose terms and conditions was a provision designated as section 2(b):
"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, * * * within nine months after delivery of the property, * * * and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are *18 not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid."
Plaintiff's only witness was Frank Alfieri, who testified that he was advised of the damage to the boom section on the date of delivery or soon after. Within a short time he went to the Hegarty place of business and saw the damage. Norwalk's agent was also present. Alfieri had no further communication with Norwalk within nine months of the delivery because, in his opinion, it was Hegarty's duty to file a formal claim. Eventually, Alfieri wrote to Norwalk in plaintiff's behalf on December 3, 1964, almost 15 months after delivery.
William F. Hegarty testified that the boom was damaged to such an extent as not to be usable, and that he had instructed his office manager, one Donagan, to prepare a notice of claim and send it to Norwalk. A photocopy of the claim allegedly prepared was marked as an exhibit. It bears the date October 30, 1963 and is addressed to Norwalk's North Bergen Terminal. Hegarty admitted that he had no actual knowledge as to whether the claim form ("Standard Form for Presentation of Loss and Damage Claim") was ever prepared or mailed, and he did not know what documents were to have been submitted with it. He said that in his opinion it was plaintiff's duty, as shipper, to file the formal claim. He had accepted the defective boom only "as an accommodation" to the truckdriver, and it was for this reason that he felt that the shipper, and not he, had the burden of filing the claim form.
In the course of his testimony McLaughlin, Norwalk's terminal manager, said it was customary for the consignee to file any claims relating to lost or damaged merchandise. With regard to the alleged filing of a claim by the Hegarty company, he stated that he did not personally open every piece of mail coming to his office. He went on to explain the claim procedure followed by his office: (1) upon notification of damage, a "Loss or Damage Inspection Report" would be *19 completed and held in his office for receipt of the formal written claim, accompanied by the documents outlined at the bottom of the standard claim form; (2) when the formal claim was received, the inspection report and Norwalk's copy of the delivery receipt would be attached to it and sent to Norwalk's claim agent at Lancaster, Pa., for processing through the home terminal which, in turn, would acknowledge receipt of the claim to the party presenting it. There was no such acknowledgment until after Norwalk had received plaintiff's letter of December 3, 1964 inquiring why its claim had not been paid.
The trial judge found as a fact that there was no delivery to Hegarty of the damaged boom section, because it had been left at the Hegarty premises merely as an accommodation to Norwalk. He also found as a fact that Hegarty had made a formal written claim, which was received by Norwalk within the nine-month period called for by section 2(b) of the bill of lading. He thereupon entered judgment against Norwalk. Norwalk's motion for a new trial was argued and denied.

I
We first dispose of plaintiff's contention that the trial court's finding of no delivery to Hegarty excused strict compliance with section 2(b) of the bill of lading. In our view, that finding is without basis in law and does not accord with the common understanding of the meaning of "delivery."
The trial judge apparently confused "delivery" with "acceptance." That Hegarty permitted Norwalk's driver to leave the damaged boom section at its place of business "as an accommodation" to Norwalk does not alter the fact that physical delivery occurred. Delivery to the buyer through the carrier did not, of course, constitute an acceptance. The Zone Co. v. Service Transportation Co., Inc., 137 N.J.L. 112, 116 (Sup. Ct. 1948). Hegarty was entirely free to reject the damaged boom section, but the section was nonetheless delivered. Zone Co. was decided under our former Uniform *20 Sale of Goods Act, R.S. 46:30-1 et seq. The Uniform Commercial Code, effective in this State since January 1, 1963, does not alter the law controlling this case. See N.J.S. 12A:2-503, 504; also N.J.S. 12A:2-603, 604 dealing with a buyer's duties and options with regard to rightfully rejected goods.
Since the trial judge's finding of no delivery was erroneous, plaintiff's contention that it was thereby excused from the formal notice of claim requirement of the shipping contract is without merit.

II
The statement of facts prepared by the trial judge does not support his finding that the notice of claim was sent by Hegarty and received by Norwalk. By force of statute or agreement, a required notice may effectively be given if properly mailed, regardless of its receipt. Absent such a statute or contract provision respecting the method of giving notice, the general rule is that there is a presumption that mail correctly addressed, stamped and mailed, was received by the party to whom it was addressed. That presumption is rebuttable and may be overcome by evidence that the notice was never in fact received. Szczesny v. Vasquez, 71 N.J. Super. 347, 354 (App. Div. 1962).
The stated facts of this case raise not even a rebuttable presumption of mailing by the Hegarty company. William F. Hegarty, Jr. conceded that he did not know whether the required notice of claim had been prepared or mailed. Donagan, the person who was to perform that function, was never called as a witness, as he should have been in the absence of an admission by Norwalk or any proof that would as much as suggest that it had received Hegarty's claim. Plaintiff's failure to call Donagan is the fatal flaw in its proofs. Thus, we have nothing to show that the notice of claim allegedly sent by Hegarty under date of October 30, 1963 was mailed, properly addressed and with postage prepaid.
*21 We find other elements in the proofs indicating that the claim notice allegedly prepared and sent by Hegarty was never sent or received. At the bottom of the September 11, 1963 inspection report introduced in evidence appear printed directions as to the procedure to be followed in presenting a claim for loss and damage; the claim must be made in writing to the carrier at the point of delivery or at the point of origin within nine months after delivery of the property, with the following documents attached: the original of the inspection report, the original paid freight bill, the original bill of lading, the original invoice or an exact certified copy, the bill showing the nature and amount of the claim and, finally, any other particulars obtainable in proof of loss or damage. The damage claim allegedly sent by defendant Hegarty on October 30, 1963 indicated that the following documents were submitted in support of the claim: the original invoice, the original paid freight bill, and the carrier's inspection report form. Hegarty could not have sent these original documents, and Norwalk have received them, because when Alfieri wrote Norwalk about the claim on December 3, 1964 he enclosed the originals of the freight bill, inspection report and the bill of lading, along with other papers necessary to proving the claim. Alfieri verified that these enclosures were in fact the originals. From this it follows that the Hegarty company did not send the original documents on October 30, 1963; it did not mail the formal notice of claim on that date, as it led the trial judge mistakenly to believe.

III
The liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions. Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194, 197 (1964), rehearing denied 377 U.S. 984, 84 S.Ct. 1880, 12 L.Ed.2d 752 (1964); Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 *22 (1931); Olivit Bros. v. Pennsylvania R.R. Co., 88 N.J.L. 241, 243 (E. & A. 1916). The governing statute is section 20(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), which originated with the Carmack Amendment of 1906 (34 Stat. 595). The 1906 amendment made an interstate carrier liable to the lawful holder of a bill of lading for "the full actual loss, damage, or injury" caused by it to property it transported, and declared unlawful and void any contract, rule, regulation, tariff or other attempted means of limiting this liability. The Cummins Amendment of 1915 (38 Stat. 1196) amended section 20(11) to permit the carrier to require the shipper to file a timely notice of his claim prior to filing a law suit, in cases where the carrier was without fault, but forbade such a condition where the loss resulted from the carrier's negligence.
While the statute does not specifically provide that notice of claim be in writing or, for that matter, in any other particular form, section 2(b), quoted above, has historically been incorporated in the uniform bill of lading as a safeguard against tariff abuses and discriminations. Its requirement that notice of claim be in writing has come to be an integral part of the uniform published tariffs and regulations, which a carrier may not waive or be estopped to assert. Loveless v. Universal Carloading & Distributing Co., 225 F.2d 637, 639 (10 Cir. 1955), citing, among other cases, Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916), and Chesapeake & Ohio Ry. Co. v. Martin, above.
The proviso added by the Cummins Amendment of 1915 forbidding the requirement of a notice in cases of negligence, was repealed in 1930 by 46 Stat. 251. The time within which a carrier is permitted to require formal notice by the shipper has been amended several times since 1915, and presently stands at nine months  the period provided for in section 2(b) of the bill of lading here involved.
Forty years ago Mr. Justice Stone, writing for the United States Supreme Court, held that unless the shipper *23 could bring itself within the proviso of the Cummins Amendment of 1915 by showing that the damage was due to the carrier's negligence, its failure to give written notice of the claim within the four-month period then specified by section 20(11) of the Interstate Commerce Act would bar it from recovery. Chesapeake & Ohio Ry. Co. v. A.F. Thompson Mfg. Co., 270 U.S. 416, 421, 46 S.Ct. 318, 319, 70 L.Ed. 659, 661 (1926). The negligence proviso having been eliminated by Congress in 1930, it follows from the cited case that where written notice is a condition precedent to recovery, the present law demands compliance with that requirement.
The written notice of claim requirement must be given a reasonable and practical construction, adapted to the circumstances of the particular case under consideration; it is "addressed to a practical exigency and it is to be construed in a practical way." Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., above, 241 U.S., at page 198, 36 S.Ct., at page 545, 60 L.Ed., at page 953. We do not deal here with an exchange of telegrams between carrier and shipper, in the last of which the shipper claimed damages for total loss, as in the Blish Milling Co. case, nor with the factual situation in Loveless v. Universal Carloading & Distributing Co., above, 225 F.2d 637, where the court, by a 2-1 vote, held that the written notice requirement was satisfied by an exchange of correspondence between shipper and carrier. There was no substantial compliance here with the section 2(b) requirement: neither plaintiff nor Hegarty sent any written notice of claim to Norwalk within the nine-month period, nor was there any exchange of correspondence from which, by a reasonable and practical construction, it might be said that the requirement was satisfied.
Plaintiff contends, as it did in the trial court, that since Norwalk had actual knowledge of the relevant facts surrounding the damage to the boom section, the filing of a formal notice of claim was not required. The only authorities cited for the proposition are Hopper Paper Co. v. Baltimore & Ohio R. Co., 178 F.2d 179 (7 Cir. 1949), certiorari denied *24 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950), and Public Service Elec. & Gas Co. v. Reading Company, 13 N.J. Super. 383 (Law Div. 1951), 17 N.J. Super. 148 (Law Div. 1951), affirmed o.b. 9 N.J. 606 (1952).
In Hopper, a carload of paper sent by plaintiff to the Government Printing Office was destroyed in a wreck between two of defendant carrier's trains on August 16, 1945. The bill of lading contained the language of section 2(b) referred to earlier in this opinion. On August 18 the carrier advised plaintiff and the consignee by telegram that the paper had been destroyed. On July 30, 1946 plaintiff filed a written claim with defendant for the value of the paper less salvage. Although the claim was made more than nine months after delivery, the court held in favor of Hopper. In its view "the general [?] rule in cases such as ours is, that failure to give notice of a claim for damages or loss in accordance with a stipulation in a contract for the shipment of goods is excused, or is inapplicable, where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice could give," citing 9 Am. Jur., Carriers, § 803, p. 920, and 13 C.J.S., Carriers, § 240(a), p. 487, as authority for this very broad and questionable proposition.
The Hopper case was characterized as "perhaps out of line with the other cases," an understatement found in Chief Judge Magruder's carefully considered opinion in Insurance Company of North America v. Newtowne Mfg. Co., 187 F.2d 675 (1 Cir. 1951). And Judge Wallace, dissenting in Loveless v. Universal Carloading & Distributing Co., above, described Hopper as
"* * * a maverick decision both on its facts and law. Although the Hopper decision creates a patent conflict in the law at the court of appeals level, the unbroken line of acceptable authority denies appellant's right to now sue. As pointedly recognized in Northern Pac. Ry. Co. v. Mackie [195 F.2d 641, 642 (9 Cir. 1952)], the fact the carrier has actual knowledge of the loss is totally irrelevant; the aggrieved party must make written claim within the stipulated time." (225 F.2d, at pages 641-642)
*25 Hopper has been distinguished, as in Delphi Frosted Foods Corp. v. Illinois Central R. Co., 188 F.2d 343 (6 Cir. 1951), and East Texas Motor Freight Lines v. United States, 239 F.2d 417 (5 Cir. 1956); criticized, as in the Newtowne Mfg. case; or ignored, as in Northern Pac. Ry. Co. v. Mackie, 195 F.2d 641 (9 Cir. 1952). It was discussed at length and seemingly served as support for the majority opinion in Loveless v. Universal Carloading & Distributing Co., above, 225 F.2d 637, a much stronger case on its facts, and where the dissenting judge flatly stated that to hold there was a written claim in that case, as required by section 2(b), was an "absolute fiction."
The Public Service Elec. & Gas Co. decision gives no support to plaintiff's position. Indeed, its holding is clearly in favor of defendant Norwalk. In that case plaintiff sought recovery for three reactors damaged in transit from the General Electric Company plant in Pittsfield, Mass. to Port Reading, N.J. The reactors were useless to Public Service in their damaged condition. They were returned to Pittsfield where, except for salvage value, they were scrapped and new reactors manufactured in their stead. The original reactors had been shipped under uniform straight bills of lading, as required by 49 U.S.C.A. § 20(11), on the back of which appears the language of our section 2(b). Written claims were not filed until some 18 months after delivery of the reactors. Defendant moved for summary judgment prior to trial because of plaintiff's failure to file a written claim of damage within nine months. The motion was denied, 13 N.J. Super. 383, and the matter went to trial before Judge Colie, sitting without a jury. At the trial it appeared that when the reactors arrived at Port Reading they were examined by representatives of both plaintiff and defendant. There was no testimony which could reasonably be construed as a claim on plaintiff's part.
Judge Colie held in favor of defendant, 17 N.J. Super. 148, quoting from Anchor Line Ltd. v. Jackson, 9 F.2d 543, *26 545 (2 Cir. 1925), where the court, speaking through Judge Hand, said after reviewing a number of federal decisions:
"The upshot of these cases is that notice that the goods have been damaged is not notice of a claim for recoupment. The result is perhaps a narrow interpretation, and has not been established in this circuit without strong opposition. Its existence is, however, unquestioned, and it seems to us undesirable by nice distinctions to invite perpetual litigation in its application. * * * We may concede that notice of damage ordinarily presupposes that the consignee is contemplating a claim, but it is not equivalent even to an assertion that he will make one in the future; certainly it is not a claim in praesenti. He may conclude that he has no rights against the ship under the bill of lading, or that, if he has, it is not worth his while to press them. A protest is not a claim."
The judge then discussed and distinguished the Hopper case, above, as well as Hyatt Roller Bearing Co. v. Pennsylvania R.R. Co., 92 N.J.L. 94 (Sup. Ct. 1918), affirmed o.b. 92 N.J.L. 631 (E. & A. 1919), where the court had found as a fact that the information as to the loss was substantially a claim within the meaning of section 2(b). He also cited and quoted at length with approval from the Newtowne Mfg. Co. decision, above, 187 F.2d 675, which holds contrary to plaintiff's contention in the present case.
In the years that have intervened since Thompson Mfg. Co., above, the Circuit Courts of Appeals have almost unanimously heeded Mr. Justice Stone's ruling that there can be no recovery in the absence of strict compliance with the requirement that there be a written notice of claim. The section 2(b) provision has two main purposes. The first is to afford the carrier a reasonable opportunity to examine the nature and extent of the damage, determine the merits and validity of the claim, and protect itself against possible imposition. Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., above; St. Louis, Iron Mt. & So. Ry. Co. v. Starbird, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917 (1917). This purpose is obviously met where the carrier, as here, has contemporaneous knowledge as to the damage suffered in the course of transit.
*27 The second purpose, basic to the policy underlying section 20(11) of the Interstate Commerce Act and the section 2(b) provision in bills of lading which implement it, is to prevent preferences and discrimination by carriers as among shippers. This has been described as one of the principal evils at which the act was aimed; to disregard the condition precedent to recovery incorporated in the bill of lading would open the door to evasions of the spirit and purpose of the act, Delphi Frosted Foods Corp. v. Illinois Central R. Co., above, 188 F.2d, at page 345; Northern Pac. Ry. Co. v. Mackie, above, 195 F.2d, at page 643. This second and vital purpose is not served by any holding that mere knowledge on the part of the carrier as to the damage suffered satisfies the written claim of loss requirement. And see Olivit Bros. v. Pennsylvania R.R. Co., above, 88 N.J.L., at pages 245-246; and cf. Annotation, 135 A.L.R. 611, 615 (1941).
As was said in Anchor Line, notice of damage is not notice of claim; although a claim ordinarily follows upon a notice of damage, the shipper or consignee may not press his claim. The damage may be relatively insignificant, or in some cases the shipper may take the damaged item back and replace it without any claim being made against the carrier. There was nothing like a timely written notice of claim in this case, and accordingly plaintiff shipper can have no recovery against defendant carrier, Norwalk. Gooch v. Oregon Short Line R. Co., 258 U.S. 22, 24, 42 S.Ct. 192, 193, 66 L.Ed. 443, 445 (1922, Holmes, J.); Baltimore & Ohio R. Co. v. Leach, 249 U.S. 217, 39 S.Ct. 254, 63 L.Ed. 570 (1919); Southern Pacific Co. v. Stewart, 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350 (1919); St. Louis, Iron Mt. & So. Ry. Co. v. Starbird, above; B.A. Walterman Co. v. Pennsylvania R.R. Co., 295 F.2d 627 (6 Cir. 1961); East Texas Motor Freight Lines v. United States, above, 239 F.2d 417 (5 Cir. 1956); Northern Pac. Ry. Co. v. Mackie, above, 195 F.2d 641 (9 Cir. 1952); Delphi Frosted Foods Corp. v. Illinois Central R. Co., above, 188 F.2d 343 (6 Cir. 1951); Insurance Company of North America v. Newtowne Mfg. Co., above, 187 F.2d 675 (1 Cir. *28 1951); Annotations, 1 A.L.R. 900, 904 (1919) and 175 A.L.R. 1162, 1165 (1948); and cf. the dissent in Loveless v. Universal Carloading & Distributing Co., above, 225 F.2d, at page 641.
We cannot ignore the clearly defined and long recognized legal principle endorsed by the authorities just cited. Although it may result in a certain harshness in particular cases, the overwhelming weight of authority is to deny recovery on the ground that to rule otherwise would encourage discriminatory treatment of shippers.
Accordingly, the judgment is reversed.